IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF WENDY ARIANA SPENCE, by and through BRIAN L. SPENCE AND MARITZA MOLEIRO-SPENCE, Parents and Co-Administrators of the Estate of WENDY SPENCE<br><br>*Plaintiff,*<br><br>v.<br><br>YEADON BOROUGH, et al.,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 24-1530 |

**Pappert, J.**                                                                                                          **September 9, 2024**

**MEMORANDUM**

In November of 2022, Wendy Ariana Spence hung herself in a holding cell at the Yeadon Borough Police Headquarters. Spence's Estate, through her parents as co-administrators, sued the Borough, several of its police officers, and a firefighter, as well as Trinity Health Mid-Atlantic Medical Group and one of its employees, Lyle Kunkle.[1]

The Estate alleges against the individual defendants a claim under 42 U.S.C § 1983 for reckless indifference to Spence's medical needs in violation of the Fourteenth Amendment. The Estate asserts a separate *Monell* claim against the Borough, as well as three claims under Pennsylvania law. It accuses Trinity Health and Kunkle of violating the Pennsylvania Emergency Medical Services System Act, Trinity Health,

---

[1] Another purported Trinity Health employee is identified, at least for now, as Jane Doe. Although plaintiffs may use Doe defendants "until reasonable discovery permits the true defendants to be identified," *Blakeslee v. Clinton Cnty*, 336 Fed. App'x 248, 250 (3d Cir. 2009), only the claims against Kunkle will be addressed in this opinion.

1

Kunkle, and Borough firefighter Solomon White of negligence and brings a wrongful death and survival action against all defendants.

Trinity Health and Kunkle move to dismiss the § 1983 claim against Kunkle (Count I) and the Emergency Medical Services System Act claim against both of them (Count III). The Court denies the motion as to the reckless indifference claim against Kunkle and grants it as to the claim under the Emergency Medical Services System Act. Because that statute does not provide a private right of action, Count III is dismissed with prejudice.

I

On November 8, 2022, Yeadon Borough police officers arrested Wendy Spence for trespassing after they responded to a domestic disturbance call. (Am. Compl. ¶ 24, 31, ECF No. 15.) Spence was intoxicated, and while speaking with police, became combative and confused. (*Id.* at ¶ 28.) During the arrest, Spence screamed and physically resisted the officers. (*Id.* at ¶ 32.) On the way to police headquarters, she continued to scream, and struck her head against the rear window of the squad car multiple times. (*Id.* at ¶ 34.)

As an officer began removing the handcuffs from Spence at police headquarters, Spence repeatedly slammed the cuff into her head. (*Id.* at ¶ 44.) The police called for emergency medical services to treat her resulting head wound. (*Id.* at ¶ 121–22.) Kunkle and another Trinity Health employee responded. (*Id.* at ¶ 44, 166–68.) Spence continued to scream and resist assistance while they treated her. (*Id.* at ¶ 169.) Spence repeatedly stated that she wanted to die and threatened to kill herself in the holding cell. (*Id.* at ¶ 44, 170.) She asked to be taken to a mental hospital and

demonstrated that she could move her handcuffed arms from the back to the front of her body. (*Id.*) After Kunkle and his colleague treated Spence's head wound, they and the officers left the cell. (*Id.* at ¶ 45.)

Within one minute of being left alone, Spence began to hang herself from the cell doorknob. No one checked on her for roughly twenty minutes, and she was eventually given life-sustaining measures and transported to Penn Presbyterian Hospital, where she died ten days later. (*Id.* at ¶¶ 52–56.)

## II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (quotations omitted). In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). "Conclusory assertions of fact and legal conclusions," however, are not entitled to the presumption of truth. *Schuchardt*, 839

F.3d at 347. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

### A

Section 1983 requires a plaintiff to allege (1) the violation of a right and (2) that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Kunkle contends he was not acting under color of state law when he treated Spence.

Convicted prisoners and pre-trial detainees have a constitutional right to the provision of adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104, (1976) (holding failure to provide care to convicted prisoners violates the Eight Amendment); *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983) (holding the Fourteenth Amendment protects pre-trial detainees' right to care). Deliberate indifference to a serious medical need constitutes a violation of this right. *Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017). A "particular vulnerability to suicide" is one form of serious medical need. *Id.* (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

The "under color of state law" requirement of Section 1983 can be satisfied by conduct that constitutes state action under the Fourteenth Amendment. *West*, 487 U.S. at 49. An otherwise private actor's conduct is considered state action where (1) the private actor exercised power that is traditionally the state's exclusive prerogative; (2)

4

the private actor "acted with the help of or in concert with state officials"; or (3) the state "so far insinuated itself into a position of interdependence with" the private actor that it must be viewed as a "joint participant" in the conduct. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (citations omitted). Each test requires a fact-specific inquiry into the circumstances. *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

A private party can voluntarily assume the state's obligation to provide medical care to inmates and pre-trial detainees, thereby becoming a state actor subject to liability under Section 1983. *West*, 487 U.S. at 49–58; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55 (1999) ("[T]he State was constitutionally obligated to provide medical treatment to injured inmates, and the delegation of that traditionally exclusive public function to a private physician gave rise to a finding of state action"). Whether this care takes place within the prison walls or not is immaterial. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827 (7th Cir. 2009). *West* focused on the function of the provider, the relationship between the provider, state, and prisoner, and whether the care was provided voluntarily. *Id.* at 826–28 (analyzing factors discussed in *West* and concluding that there is no "pat answer as to whether any particular medical care arrangement constitutes state action" under the public function test). Thus, mere existence of a contract between a private provider and the state is not determinative of the state action question. *Compare West*, 487 U.S. at 56 (finding the provider "voluntarily assumed [the state's] obligation" when he contracted to provide medical service in a prison) *with Rodriguez*, 577 F.3d at 828 (hypothesizing a provider which agreed to serve anyone in need of emergency treatment and noting that the

provider's resulting inability to "discriminate against incarcerated individuals does not mean that it has agreed to step into the shoes of the state and assume the state's responsibility"). Likewise, merely providing medical care to an individual in state custody is insufficient to transform a private party into a state actor. *See, e.g.*, *Groman*, 47 F.3d at 642 (finding no evidence of state control over a volunteer first aid squad's actions and holding that neither the police request for aid nor plaintiff's custodial status created state action); *Peters v. Brown*, 793 F. App'x 118 (3d Cir. 2019) (finding the fact that plaintiff was under arrest when he was brought to the hospital insufficient to make the treating nurse a state actor).

B

While Kunkle was an employee of a private company (Resp. in Opp. to Mot. to Dismiss 8, ECF No. 18), the Amended Complaint alleges that Kunkle was called pursuant to an agreement between Trinity Health and the Borough under which Trinity Health provides medical care to detainees. (Am. Compl. ¶¶ 122, 123.) Trinity Health employees were allegedly "stationed" in the same Borough-owned building as the police and "routinely provided" care to detainees. (*Id.* at ¶¶ 126, 128.) The Estate also alleges that Trinity Health "provided EMS personnel to work for and on behalf of the Yeadon Fire Company who authorized Trinity Health to perform official municipal EMT services to detainees of the Yeadon police." (*Id.* at ¶ 19.)

Taking the Amended Complaint's allegations as true allows for the reasonable inference that Trinity Health's employees acted either (1) pursuant to a contract that expressly provided for detainee care, thereby satisfying the public function test as a voluntary assumption of the state's constitutional obligation, or (2) under the direction

6

of and in cooperation with the Fire Company, thereby satisfying one of the other tests. *Cf. Rodriguez*, 577 F.3d at 828 & n.18 (noting that even where the public function test isn't met, care provided at "the affirmative direction of the state, or in collaboration with the state," could constitute state action). In either case, the alleged facts provide at this stage a plausible basis for treating Kunkle as a state actor.

IV

In Count III, Spence's Estate alleges Trinity Health and Kunkle violated the Emergency Medical Services System Act ("EMSSA"), 35 Pa. Cons. Stat. Ann. §§ 8101–58. These defendants argue the statute contains no private right of action, express or implied, while the Estate believes a private right of action can be inferred from the law's liability limitation. Trinity Health and Kunkle have the better of the argument.

A

The EMSSA contains no express private right of action. Because the Pennsylvania Supreme Court has not addressed whether the statute contains an implied cause of action, this Court "must predict how it would rule." *Spence v. EASB Group, Inc.*, 623 F.3d 212, 216 (3d Cir. 2010). To determine whether a statute implicitly creates a private cause of action, the Pennsylvania Supreme Court applies a three-factor test, asking if "(1) the plaintiff is part of a class for whose 'especial' benefit the statute was enacted; (2) there is an indication of legislative intent to create or deny a remedy; and (3) an implied cause of action is consistent with the underlying purpose of the legislative scheme." *MERSCORP, Inc. v. Delaware Cnty.*, 207 A.3d 855, 870 n.14 (citing *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999)). "The violation of

7

a statute and the fact that some person suffered harm does not automatically give rise to a private cause of action in favor of the injured person." *Witthoeft*, 733 A.2d at 627.

B

1

The Pennsylvania Supreme Court would likely not find a private cause of action. First, Spence did not belong to a special class for whose benefit the statute was enacted. The Pennsylvania General Assembly emphasized in the law the public interest in prompt, effective, competent emergency medical services. 35 Pa. Cons. Stat. Ann. § 8102. To that end, the statute was intended to "establish and maintain an effective and efficient emergency medical services system which is accessible on a uniform basis to residents . . . and to visitors." *Id.* § 8102(8); *cf. Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1223 (Pa. 2002) (describing the legislature's intent in enacting the earlier Emergency Medical Services Act as "aspir[ing] to assure readily available and coordinated emergency medical services of the highest quality to the people of Pennsylvania"). That the statute benefits the broader public, with no class singled out for an "especial" benefit, suggests that it does not implicitly create a private right of action. *Cf. Witthoeft*, 733 A.2d at 627 ("This court is hesitant to provide a cause of action to the public at large and in certain situations has limited causes of action to those victims who are part of a foreseeable and identifiable class.").

As to the applicable test's second factor, the legislature when enacting the statute did not indicate any intent to create a private remedy. The statute's provisions primarily concern (1) statewide development efforts and an administrative framework and (2) provider certification, education, and licensing requirements. *Cf. McKinney v.*

8

*West End Vol. Ambulance Ass'n*, 821 F. Supp. 1013, 1015–16 (E.D. Pa. 1992) (describing the contents of the EMSSA's predecessor). And the Department of Health is given express authority to discipline EMS providers and agencies for any violation. 35 Pa. Cons. Stat. Ann. §§ 8121, 8141, 8142; *see also id.* §§ 8122, 8124, 8126, 8127 (authorizing discipline of EMS vehicle operators; EMS instructors; medical command physicians and facility medical directors; and medical command facilities). Given this comprehensive enforcement mechanism, a private right of action isn't necessary to effectuate the EMS provider requirements. *Cf. Hudnell v. Thomas Jefferson Univ. Hospitals, Inc.*, 537 F. Supp. 3d 852, 860 (E.D. Pa. 2020) (finding the legislature did not intend to bar a private cause of action where no administrative agency was given authority to enforce an anti-discrimination provision and noting that without a private right of action, the prohibition would be ineffective).

Moreover, the statute contains only two references to private civil suits, neither of which suggests that private parties may sue for violations of the Act. Section 8152(a) provides review organizations, and persons who provide them with information, protection from civil suit. 35 Pa. Cons. Stat. Ann. § 8152(a). Similarly, Section 8151 prohibits awarding civil damages against certain actors "absent a showing of gross negligence or willful misconduct." *Id.* §§ 8151(1), (2), (3), (5); *see also id.* §§ 8151(6)–(8) (providing full immunity from civil liability in specific circumstances). Rather than affirmatively provide for civil damages for grossly negligent or willful misconduct, this section prohibits liability for conduct that falls below that standard. *See, e.g.*, *Bouchon v. Citizen Care, Inc.*, 176 A.3d 244, 256–57 (Pa. Super. Ct. 2017) (treating Section 8151 as an immunity provision in a suit alleging gross negligence); *Ivers v. Brentwood*

9

*Borough Sch. Dist.*, No. 20-cv-1244, 2021 WL 769489, at *4–*5 (W.D. Pa. February 26, 2021) (same).  This liability shield signals the General Assembly's awareness of independent causes of action under which providers can be sued; nothing in the text suggests that it creates a new cause of action for violations of the statute.  The fact that both of these references to private civil suits pertain to circumscribing liability further suggests that the legislature did not intend to create a private right of action.  *Cf. Witthoeft*, 733 A.2d at 626 (noting that "to the extent the [provision of the Motor Vehicle Code] discusses civil actions at all, it precludes a private cause of action").

Finally, considering the third factor, a private right of action is not consistent with the law's purpose.  Again, the legislature wished to promote the existence of a statewide system of competent emergency medical services by creating development plans, an administrative framework and uniform provider standards.  The legislature chose to expressly authorize administrative sanctions for violations of these standards, saying nothing about private civil suits.  This suggests that the statute's purpose does not require a private cause of action.  *Cf. Solomon v. U.S. Healthcare Systems of Pennsylvania, Inc.*, 797 A.2d 346, 353 (Pa. Super. Ct. 2002) (finding the purpose of a statute would not be served by a private right of action where, "[o]n the contrary," the law "clearly set forth a system of managed health care accountability to be enforced by the Insurance Department, not by a private action").

2

Examination of the specific provisions Kunkle allegedly violated reinforces this reading of the statute.  Section 8115(a)(2) is merely a descriptive definition of the work an EMT can perform; it imposes no required action enforceable by litigation.  35 Pa.

10

Cons. Stat. Ann. § 8115(a)(2). In Section 8121(a), authority to discipline providers for the enumerated acts is expressly given to the Department, with no mention of private litigation for any violation. *Id.* § 8121(a). And although Section 8129(m) sometimes requires an EMS agency to transport individuals in state custody for treatment, nothing in the text suggests the legislature intended this requirement be privately enforced, whereas the Department is expressly authorized to pursue sanctions against EMS agencies in Section 8142. *Id.* §§ 8129(m), 8142.

V

A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The decision of whether to grant or deny leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted). Because there is no private right of action under the EMSSA, it would be futile for the Estate to attempt to amend this claim.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.