**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ESTATE OF WENDY ARIANA SPENCE, by and through BRIAN L. SPENCE AND MARITZA MOLEIRO-SPENCE, Parents and Co-Administrators of the Estate of WENDY SPENCE, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> YEADON BOROUGH, et al., <br><br> *Defendants.* | CIVIL ACTION <br> No. 24-1530 |

**Pappert, J.**                                                                                                             **March 17, 2025**

## MEMORANDUM

Plaintiffs filed a petition to approve the settlement of this wrongful death and survival action. The Court ordered supplemental briefing on several matters, including the appropriateness of the proposed allocation between the wrongful death and survival actions and the reasonableness of attorneys' fees and costs. (ECF Nos. 49, 50.) The petition is unopposed, and the Court approves the proposed settlement and its allocation and distribution.

I

On November 8, 2022, Wendy Spence committed suicide by hanging herself in a holding cell at Yeadon Borough Police Headquarters. When found, she was given life-sustaining measures and transported to Penn Presbyterian Hospital, where she died ten days later. Spence died intestate with no surviving spouse, and her parents were appointed co-administrators of her estate. They hired LaRosa Law Firm at an agreed-

upon contingency fee of 33.33% and filed this lawsuit against Yeadon Borough and Mercy Management of Southeastern Pennsylvania. The Estate alleges violations of Spence's Fourteenth Amendment right to adequate medical care as well as Pennsylvania state law claims for negligence, wrongful death and survival. Spence's fourteen-year-old son, G.D., by and through his parent, George Davis VI, was later joined as a plaintiff.[1]

Defendants have agreed to settle the claims against them for a gross settlement amount of $2,225,000. Plaintiffs seek the following allocation: (1) $25,000 to LaRosa Law Firm for reimbursement of litigation expenses; (2) $750,000 to LaRosa Law Firm for legal fees; (3) $750,000 in wrongful death benefits to G.D.; and (4) $725,000 in survival benefits to the Estate. (Supp. Br. at 12, ECF No. 50.)

II

Rule 41.2 of the Local Rules of Civil Procedure provides that "[n]o claim of a minor . . . or of a decedent's estate in which a minor . . . has an interest shall be compromised, settled, or dismissed," "[n]o distribution of proceeds shall be made out of any fund obtained for a minor . . . as a result of a . . . settlement," and "[n]o counsel fee, costs or expenses shall be paid out of any fund obtained for a minor . . . unless approved by the court." Loc. R. Civ. P. 41.2(a)–(c). This rule is procedural and does not provide a substantive rule of decision. Federal courts thus apply state law to "determine the fairness of [the] settlement agreement and the reasonableness of any attorneys' fees to

---

[1] Spence's biological daughter, A.S., was adopted, *see* (Pet. for Appr. of Settlement at 2, ECF No. 48; ECF No. 48-2) and is not part of this action, *see* (*id.*); 20 Pa. Con. Stat. § 2108 ("An adopted person shall not be considered as continuing to be the child or issue of his natural parents except in distributing the estate of a natural kin, other than the natural parent, who has maintained a family relationship with the adopted person.").

be paid from the settlement amount . . . ." *Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 669 (E.D. Pa. 2000).

Under Pennsylvania law, "in considering whether to approve a settlement, the Court is charged with protecting the best interests of the minor." *Power v. Tomarchio*, 701 A.2d 1371, 1374 (Pa. Super. Ct. 1997). "To assure that the child's interests are protected, the 'petition should include all relevant facts and the reasons why the guardian of the minor believes that a settlement is desirable and in the minor's best interest to discontinue, compromise, or settle the action.'" *Collier v. Dailey*, No. 98-3261, 1998 WL 666036, at *1 (E.D. Pa. Sept. 24, 1998) (citing *Klein v. Cissone*, 443 A.2d 799, 802 (Pa. Super. Ct. 1982). Although "the parties and counsel are usually in the best position to evaluate the settlement and their judgments are entitled to considerable weight," "[t]he court must be prepared to substitute its judgment for that of the minors, the minors' counsel, and the minors' guardian." *Calvert v. General Accident Ins. Co.*, No. 99-3599, 2000 WL 124570, at *5 (E.D. Pa. Feb. 2, 2000).

Pennsylvania law also requires court approval of proposed settlements of survival actions brought by an estate. 20 Pa. Cons. Stat. § 3323(b). The primary purpose of this requirement is "to protect the estate, as well as the creditors and beneficiaries thereof." *Moore v. Gates*, 580 A.2d 1138, 1141 (Pa. Super. Ct. 1990); *see also Soares v. McClosky*, 466 F. Supp. 703, 707 (E.D. Pa. 1979) (explaining § 3323 "protects potential beneficiaries, assures that the taxing authority gets its due, and shelters the decedent's representative from subsequent liability"). Further, "where wrongful death and survival actions are settled for a single amount, the amount apportioned to the survival action must be approved by a court having jurisdiction."

3

*Moore*, 580 A.2d at 1141.[2]  Section 3323 also allows the Court to approve any "agreement for the payment of counsel fees and other proper expenses . . . ." 20 Pa. C.S. § 3323(b)(1).

Therefore, approval of a survival action settlement requires determinations as to: (1) "the reasonableness of the proposed apportionment of the settlement amount between the wrongful death and survival action claims"; (2) "the adequacy of the proposed settlement amount"; and (3) "the reasonableness of the attorneys' fees and costs requested."  *See Boykin v. Platinum Healthcare Grp., LLC*, No. 22-2939, 2024 WL 387638, at *3 (E.D. Pa. Jan. 31, 2024).

A

1

Plaintiffs ask the Court to allocate approximately equal shares of the present value of the settlement proceeds to the wrongful death and survival actions.  (Supp. Br. at 14.)  Wrongful death damages "are compensation to individual members of the decedent's family for the pecuniary loss sustained by the death of the decedent." *Rodi v. Williams*, No. 12-1379, 2015 WL 1863006, at *11 (M.D. Pa. Apr. 23, 2015) (citing

---

[2]  Plaintiffs appear to have executed two settlements, one with each remaining defendant.  (Releases, ECF No. 48-4.)  The Yeadon Borough settlement releases all claims by the Estate and G.D. related to the lawsuit in exchange for $1,500,000, payable to the Estate.  (*Id.* at 2–3.)  The Mercy Management release covers all claims by the Estate and G.D. related to the lawsuit in exchange for $750,000 to fund an annuity that will make periodic payments to G.D.  (*Id.* at 6–7; Mercy Mgmt. Release Ex. A, ECF No. 48-5.)
The Yeadon Borough settlement references the Mercy Management release and provides that payment of funds pursuant to that agreement "shall extinguish any rights [G.D.] may have against the defendant releasee herein" and that the two agreements constitute "the entire agreement" between Plaintiffs and the Borough. (Releases at 4.)  The Mercy Management release doesn't reference the Yeadon Borough agreement, even stating that "there are no written or oral understandings or agreements, . . . connected with this release and settlement, that are not incorporated herein," (*id.* at 8), but given the language in the Yeadon Borough settlement, the Court treats the two as a single settlement.

4

*Tulewicz v. S.E. Pa. Transp. Auth.*, 606 A.2d 427 (Pa. 1992)). This includes "contributions the decedent would have made for their shelter, food, clothing, medical care, education, entertainment, gifts and recreation" and the "value of the services, society, and comfort" they would have received. *Smith*, 709 F. Supp. 2d at 356 (citations omitted).

In contrast, damages from a survival action "compensate the decedent's estate for losses from the tort," and address the "decedent's pain and suffering, loss of gross earning power from the date of injury until death, and probable earning during his life expectancy minus the probable cost of maintaining himself and wrongful death damages." *Smith v. Sandals Resorts Intern., Ltd.*, 709 F. Supp. 2d 350, 358 (E.D. Pa. 2010). When there is no will, survival action proceeds are divided between the decedent's heirs by the laws of intestate succession. *Id.*

2

Here, Plaintiffs seek approval for a settlement allocating $750,000 in wrongful death benefits to G.D. and $725,000 in survival benefits to the Estate. (Supp. Br. at 14.) The $750,000 will be used by Mercy Management to purchase an annuity with a lifetime value exceeding $1.6 million. (Pet. for Appr. of Settlement at 6; Mercy Mgmt. Release Ex. A at 2, 7.) In determining the reasonableness of that allocation, the Court considers the factors affecting the value of each claim.

Damages from the wrongful death claim would face two significant hurdles. First, Spence lost custody of G.D. in 2015, and had not seen him for approximately four years before her death. (Pet. for Appr. of Settlement at 3–4; Supp. Br. at 5, 9.) Second, Spence long struggled with serious mental health issues, (Pet. for Appr. of Settlement

5

at 2–3), and Social Security records reflect no earnings by Spence for the last 15 years, (Supp. Br. at 5, 8–9), suggesting she would not have materially contributed to her son's life. But while Spence's struggles impacted her relationship with G.D., he "still loved his mother" and has "fond" memories of her. (*Id.* at 11; Mediation Mem. at 22, ECF No. 50-1.) And the emotional distress he felt at her passing was not minimal; G.D. visited his mother in the hospital several times before she passed, and according to his father, has had difficulty processing her death. (Mediation Mem. at 22.)

With respect to the survival action, Plaintiffs acknowledge that Spence's lack of earnings would impact any wage loss damages included in the survival action. *See* (Supp. Br. at 5, 8–9). Similarly, they acknowledge that state law might limit pain and suffering damages to Spence's "less than [one] minute of obvious pain and suffering during the strangulation process." (*Id.* at 6.) But her suffering in that period was significant and gruesome, and although she did not regain consciousness, "hospital records indicated that she would respond to sharp stimuli and was provided pain medication" and one of Plaintiffs' experts opined that Spence was able to experience pain during her time in hospital. (*Id.* at 11; Mediation Mem. at 226.) Spence's pain and suffering justify a significant award for the survival claim.

In light of the above, the Court finds the distribution between the wrongful death and survival actions reasonable. The present value of the settlement provides nearly equal value to each claim. Even given "Pennsylvania policy favor[ing] wrongful death beneficiaries over estate beneficiaries," *Romano v. United States*, No. 20-1852, 2020 WL 7364453, at *4 (E.D. Pa. Dec. 15, 2020) (internal quotations omitted), Plaintiffs' proposed near-equal distribution might be reasonable in these circumstances,

given (1) Spence's significant suffering and her long period of absence from G.D.'s life arguably weigh in favor of a higher relative value for the survival claim and (2) the fact that the wrongful death beneficiary is also the decedent's heir under state law. *See* 20 Pa. Con. Stat. § 2103 (providing a decedent's whole estate, where there is no surviving spouse, passes first to the decedent's issue); *id.* § 2108.[3] But the Court need not decide whether the state-law preference for wrongful death beneficiaries is a barrier to approval here because of the specific terms of the settlement: to satisfy the wrongful death claim, Mercy Management will purchase an annuity with a *present* value of $750,000 but a *lifetime* value in excess of $1,600,000. The wrongful death claim thus has significantly greater value than the survival claim, a distribution the Court finds reasonable in these circumstances.

B

The Court must also determine whether to approve the total settlement amount of $2,225,000. When determining the "fair value of the lawsuit," the Court typically gives "considerable weight" to the judgment of counsel and the parties. *Matter of McLean Contracting,* No. 14-5676, 2017 WL 2618855, at *1 (E.D. Pa. June 16, 2017) (citation omitted).

Here, experienced counsel negotiated the settlement at arms-length and in good faith following a mediation before Gary R. Gremminger, Esq., of German, Gallagher & Murtagh, P.C. *See* (Pet. for Appr. of Settlement at 6). The case proceeded to discovery following a partial motion to dismiss, which demonstrated Plaintiffs' claims were at

---

[3] Plaintiffs notified the Court of their intent to petition the state courts for a different distribution of the estate, (Pet. for Appr. of Settlement at 7, 9; Supp. Br. at 14), but what the state court might do with the estate has no bearing on this Court's determination of the fairness of the settlement distribution between the estate and wrongful death beneficiaries.

least plausible, *see* (Mem. Op. ECF No. 22).  Moreover, "significant discovery was exchanged" between the parties and given to the mediator, including some expert reports.  *See* (Supp. Br. at 2–3, 7; Mediation Mem.).  They thus had a more-than-basic understanding of the allegations in the Second Amended Complaint, (ECF No. 27), and potential damages.  Still, plaintiffs' counsel believes that further litigation would have resulted in substantial additional costs and believes that the proposed settlement is, "in light of all the factors[,] . . . an excellent result."  (Supp. Br. at 10; ECF No. 48-7.)  Finally, the co-administrators and G.D.'s father stated that they believe the settlement is fair.  (ECF Nos. 48-8, 48-9.)

The Court's independent review of the case confirms that the $2,225,000 settlement is adequate when faced with the costs of additional litigation, the lack of damages for medical expenses or wage losses and risk of reduced damages for Spence's absences from G.D.'s life, Defendants' denial of liability and the uncertainty of a litigated outcome.  *Cf. In re Hughes Estate*, 59 Pa. D. & C.2d 680, 682 (Pa. Ct. Comm. Pl. 1972) ("The risk of recovering something less than the amount achieved by the settlement was a serious one. We have no difficulty in approving the amount of the settlement.").  For these reasons, the Court also finds the settlement is in G.D.'s best interests.

## C

Plaintiffs request that one-third of the total settlement fund, $750,000, be allocated for attorneys' fees.  (Supp. Br. at 2, 14.)  "[C]ourts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable parties." *Ryan v. Butera, Beausang, Cohen & Brennan*, 193 F.3d 210, 215 (3d Cir. 1999).

Nonetheless, in approving both wrongful death/survival action settlements and settlements involving minors, the Court must independently review the settlement's proposed distribution to counsel. *See Est. of Eckelberry v. CSX Transp., Inc.*, No. 18-365, 2019 WL 5068413, at *3 (W.D. Pa. Oct. 9, 2019); *J.N. v. Penn-Delco Sch. Dist.*, No. 14-1618, 2017 WL 395481, at *4 (E.D. Pa. Jan. 30, 2017); *Gilmore v. Dondero*, 582 A.2d 1106, 1109 (Pa. Super. Ct. 1990).[4]

In reviewing attorneys' fee awards in settlement agreements, Pennsylvania courts first consider the "the rate of professional compensation usual at the time and place" for the particular kind of case. *Thompson Estate*, 426 Pa. 270, 281 (1967). If the parties seek a departure from the ordinary rate, courts consider the following factors:

> [T]he amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question [sic].

*In re LaRocca's Trust Estate*, 246 A.2d 339 (Pa. 1968); *see also Gilmore*, 582 A.2d at 1109–10; Pa. R. Civ. P. 1717 (listing factors to consider in awarding counsel fees).

In wrongful death/survival actions, courts have approved attorneys' fee awards of up to forty percent of the settlement proceeds, particularly where they reflect a previously agreed-upon contingency fee arrangement. *See, e.g.*, *Nunez Bravo v. City of*

---

[4] Rule 41.2(c) only requires court approval of attorneys' fee awards if they are to be "paid *out of* any fund obtained for a minor." Loc. R. Civ. P. 41.2(c) (emphasis added). Although the fee award here specifically comes from the agreement and payment by Yeadon Borough, *see* (Releases at 2, 6), because the settlement is a global one and the Court is considering both agreements together, *supra* note 2, it has authority to review the reasonableness of the fee award in its role with respect to G.D.'s claim as well as the Estate's.

*Philadelphia*, No. 22-5190, 2024 WL 4582877, at *3 (E.D. Pa. Oct. 25, 2024) (collecting cases); *see also Wilson v. TA Operating, LLC*, No. 14-771, 2017 WL 1738422, at *2 (M.D. Pa. May 3, 2017) (discussing the general reasonableness of awarding one-third of the settlement award to fees).

Even so, and undertaking an independent evaluation of the fee award in its role as protector of G.D.'s interests, the *LaRocca* factors support the fee award. Counsel spent more than 700 billable hours on Plaintiffs' behalf, including reviewing thousands of pages of medical records, expert reports and other materials; responding to a motion to dismiss; and preparing a lengthy mediation memorandum that reflected an evaluation of the difficult legal issues and potential value of Plaintiffs' complex and uncertain claims. *See* (Supp. Br. at 2–7; Mediation Mem.; Billing Spreadsheet, ECF No. 50-3). Plaintiffs' attorney has practiced law for thirty-eight years. (Supp. Br. at 1.) If he was not seeking contingent compensation, his reasonable billing rate under the Community Legal Services of Philadelphia fee schedule would be between $735-850 per hour. *Attorney Fees*, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited March 14, 2025). 711.25 hours billed at a rate of $735 per hour would result in a fee of $522,768.75. Moreover, the issues of public significance presented by this case bolster the fair value of counsel's services. *Cf. Houchins v. KQED, Inc.*, 438 U.S. 1, 8 (1978) ("[C]onditions in prisons are clearly matters of great public importance." (internal quotations omitted)). In light of the difficulty of this case, counsel's work in the matter, the favorable result he obtained for Plaintiffs, and the public significance of this issue, the requested fee award of $750,000, or one-third the settlement amount, is fair and reasonable. *Cf. Leto v. Illum*, No. 20-884, 2021 WL

10

2186238, at *3–*4 (E.D. Pa. May 28, 2021) (finding one-third fee award reasonable, despite resulting in higher award than counsel's hourly rate and the county's lodestar would, based on the *LaRocca* factors).

Finally, the requested $25,000 for reimbursement of counsel's costs, which were primarily spent to retain experts important to plaintiffs' theory of the case and potential damages, (Supp. Br. at 7; Expense Itemization, ECF No. 50-4), is reasonable. *Cf. Boykin*, 2024 WL 387638, at *7 (noting the recoverable costs were part of the fee agreement and appropriate given the course of representation).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.